**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
**QUALITY TECHNOLOGY SERVICES,**
**HOLDING, LLC,**                             Civil Action No. 07-07458(RMB)

    **Plaintiff,**

        -against-

        **CHECKM8, INC.,**

    **Defendant**
-------------------------------------------------------X

DEFENDANT CHECKM8, INC.'S
RULE 7.1 CORPORATE DISCLOSURE STATEMENT

    Pursuant to Federal Rule of Civil Procedure 7.1, CheckM8, Inc., by and through undersigned counsel, hereby disclose that CheckM8, Inc. is not owned by any parent corporation or publicly traded corporation. Accordingly, no parent corporation or publicly traded corporation owns 10% or more of the stock of CheckM8, Inc.

Dated: October 16, 2007            By:   /s Nicholas G. Sekas_____
                                                     (electronically filed)
                                                     Nicholas G. Sekas, Esq.
                                                     Sekas & Associates, LLC
                                                     515 Madison Ave, 8th Floor
                                                      New York, NY 10022

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
**QUALITY TECHNOLOGY SERVICES,**
**HOLDING, LLC,**                                      **Civil Action No. 07-07458(RMB)**

   **Plaintiff,**

     -against-                **ANSWER,**
                                                        **SEPARATE DEFENSES, AND**
                                                        **COUNTERCLAIM**
   **CHECKM8, INC.,**

     **Defendant**
-------------------------------------------------------X

## PRELIMINARY STATEMENT

 1. Plaintiff Quality Technology Services (hereinafter "QTS") falsely alleges that Defendant CheckM8, Inc. (hereinafter "CheckM8") committed breach of contract by allegedly failing to pay for services rendered by Plaintiff between January 24, 2005 and February 21, 2007. Alternatively, Plaintiff alleges that recovery is proper under equitable legal theories, such as quantum meruit and unjust enrichment. Defendant contends that no legal or equitable remedies are available to the instant plaintiff under any of the legal theories contained in its Complaint. In marked contrast to Plaintiff's factually flawed assertions, Defendant contends that it was never behind in its payment obligations because it consistently tendered full and complete payment pursuant to a payment plan in effect with and agreed upon by the plaintiff or its agents.

 2. Defendant CheckM8, Inc., hereby contests any and all of the Plaintiff's allegations as false and without merit.

## JURISDICTION AND VENUE

3. With regard to paragraphs 6 through 8 of Plaintiff's Complaint, Defendants hereby reserve the right to object to any alleged basis for jurisdiction and venue as asserted by Plaintiffs within said Complaint.

## PARTIES

4. Defendant CheckM8 is a corporation incorporated under the laws of the State of Delaware, with its principal place of business in New York. Defendant specializes in Internet advertising.

5. Plaintiff QTS is a limited liability company organized under the laws of the State of Delaware with its principal place of business located in Overland Park, Kansas.

## ANSWERS TO FACTUAL ALLEGATIONS OF PLAINTIFFS

6. Defendant admits the allegations of Paragraph 9 of Plaintiff's factual allegations common to all causes of action.

7. Defendant admits the allegations of Paragraph 10 of Plaintiff's factual allegations common to all causes of action.

8. Defendant denies the allegations set forth in Paragraph 11 of Plaintiff's factual allegations common to all causes of action, and instead leaves Plaintiff to its proofs.

9. Defendant admits the allegations of Paragraph 12 of Plaintiff's factual allegations common to all causes of action.

10. Defendant denies the allegations set forth in Paragraph 13 of Plaintiff's factual allegations common to all causes of action, and instead leaves Plaintiff to its proofs.

11. Defendant denies the allegations set forth in Paragraph 14 of Plaintiff's factual allegations common to all causes of action, and instead leaves Plaintiff to its proofs.

## ANSWERS TO FIRST COUNT

12. Defendant relies upon the above responses to Plaintiff's factual allegations common to all causes of action as if set forth at length herein.

13. Defendant neither admits nor denies the allegations set forth in paragraph 16 of Plaintiff's factual allegations common to all causes of action, and instead leaves Plaintiff to its proofs.

14. Defendant denies the allegations set forth in Paragraph 17 of Plaintiff's factual allegations common to all causes of action, and instead leaves Plaintiff to its proofs.

15. Defendant denies the allegations set forth in Paragraph 18 of Plaintiff's factual allegations common to all causes of action, and instead leaves Plaintiff to its proofs.

16. Defendant denies the allegations set forth in Paragraph 19 of Plaintiff's factual allegations common to all causes of action, and instead leaves Plaintiff to its proofs.

## ANSWERS TO SECOND COUNT

17. Defendant relies upon the above responses to Plaintiff's factual allegations common to all causes of action, as well as the responses to the First Count of Plaintiff's Complaint as if set forth at length herein.

18. Defendant neither admits nor denies the allegations set forth in paragraph 21 of Plaintiff's factual allegations common to all causes of action, and instead leaves Plaintiff to its proofs.

19. Defendant neither admits nor denies the allegations set forth in paragraph 22 of Plaintiff's factual allegations common to all causes of action, and instead leaves Plaintiff to its proofs.

20. Defendant denies the allegations set forth in Paragraph 23 of Plaintiff's factual allegations common to all causes of action, and instead leaves Plaintiff to its proofs.

21. Defendant denies the allegations set forth in Paragraph 24 of Plaintiff's factual allegations common to all causes of action, and instead leaves Plaintiff to its proofs.

## ANSWERS TO THIRD COUNT

22. Defendant relies upon the above responses to Plaintiff's factual allegations common to all causes of action, as well as the responses to the First and Second Counts of Plaintiff's Complaint as if set forth at length herein.

23. Defendant denies the allegations set forth in Paragraph 26 of Plaintiff's factual allegations common to all causes of action, and instead leaves Plaintiff to its proofs.

WHEREFORE, Defendant demands judgment as follows dismissing the Plaintiff's Complaint as without merit.

## AFFIRMATIVE DEFENSES

### FIRST SEPARATE DEFENSE

Plaintiff fails to state a cause of action upon which relief may be granted.

### SECOND SEPARATE DEFENSE

Plaintiff's Complaint is barred by the doctrine of estoppel.

### THIRD SEPARATE DEFENSE

Plaintiff's Complaint is barred by the doctrine of laches.

### FOURTH SEPARATE DEFENSE

Plaintiff's Complaint is barred by the Statute of Frauds.

### FIFTH SEPARATE DEFENSE

Plaintiff's Complaint is barred by the doctrine of unclean hands.

### SIXTH SEPARATE DEFENSE

Plaintiff's Complaint is barred by the doctrine of waiver.

### SEVENTH SEPARATE DEFENSE

Damages, if any, sustained by the Plaintiff were the result of its own actions.

## EIGHTH SEPARATE DEFENSE

Damages, if any, sustained by the Plaintiff were the result of a third party or actions of another party over whom the Defendant had no control.

## NINTH SEPARATE DEFENSE

Plaintiff failed to act so as to mitigate its damages, if any.

## TENTH SEPARATE DEFENSE

The alleged contract between Defendant and Plaintiff is void ab initio.

## ELEVENTH SEPARATE DEFENSE

The alleged contract between the Defendant and Plaintiff is voidable.

## TWELFTH SEPARATE DEFENSE

The alleged contract between Defendant and Plaintiff has already been rendered void by the Plaintiff's actions.

## THIRTEENTH SEPARATE DEFENSE

Defendant denies the existence of a contract as referenced and referred to in the Plaintiff's Complaint.

## FOURTEENTH SEPARATE DEFENSE

Plaintiff has failed to satisfy the conditions precedent to any alleged contract between the parties and thus has no rights of action pursuant to the alleged contract.

## FIFTEENTH SEPARATE DEFENSE

Plaintiff's Complaint is barred by the doctrine of accord and satisfaction.

## SIXTEENTH SEPARATE DEFENSE

Defendants deny any allegations of breach of contract pursuant to the doctrine of impossibility.

# COUNTERCLAIM

Defendant CheckM8 Inc. (hereinafter "CheckM8"), by way of counterclaim against the plaintiff Quality Technology Services Holding, LLC (hereinafter "QTS"), says:

1. CheckM8 is a corporation incorporated under the laws of the State of Delaware with its principal place of business in the State of New York.

2. QTS is a limited liability company organized under the laws of the State of Delaware with its principal place of business located in Overland Park, Kansas. QTS, having previously acquired Globix, is a successor in interest to Globix.

3. CheckM8 is engaged primarily in the business of Internet advertising; specifically CheckM8 contracts with Internet website owners to subscribe to its software-based system for ad management of online ads sold by the owners, and in exchange, charges a subscription fee based on the monthly volume of ads managed and delivered by its system.

4. CheckM8 depends on its proprietary software system in order to manage and deliver the advertisements, a primary objective of its business.

5. In order to utilize the software applications, CheckM8 needed to lease hardware and obtain bandwidth from a service provider.

6. On or about January 24, 2005, CheckM8 entered into a contract with a corporation named Globix. The term of the contract was 24 months. The contract is titled Master Service Agreement (hereinafter "MSA").

7. In the MSA, Globix agreed to essentially lease its hardware to CheckM8, and CheckM8 planned to use said hardware to power its software applications. The software

applications must be powered in order to allow website visitors to view the website pages together with the advertisements. If the software applications are not consistently and reliably powered, neither the advertisements nor the underlying webpage will be accessible to persons on the Internet. Thus, the software applications at issue are critical to the success of CheckM8's business, as well as to the business of its customers.

8. Under the MSA, CheckM8 was required to pay approximately $24,000 per month to Globix for the lease of its hardware and use of bandwidth.

9. In March of 2006, CheckM8 sought to lease additional hardware from Globix in order to satisfy its growing client base. Globix agreed to the lease of additional hardware, executed an addendum to the contract, and indicated that CheckM8 would be responsible for an additional $6,000 per month. Thus, CheckM8 was obligated to pay approximately $30,000 per month to Globix for the lease of hardware and use of bandwidth.

10. In June of 2006, Globix unexplainably increased the lease rate from $30,000 to $37,000 per month, and has attempted to hold CheckM8 accountable for the increase.

11. In addition to the hardware that Globix agreed to provide pursuant to the MSA, CheckM8 still required bandwidth from Globix in order to successfully run its business.

12. Between January 2005 and June 2005, Globix agreed to provide bandwidth services to CheckM8 at contract rates notwithstanding that a bandwidth contract had not yet been signed.

13. CheckM8 ultimately entered into a bandwidth contract with Globix on or about June of 2005. The term of the contract was 12 months. When the contract expired in

June of 2006, Globix increased the cost of bandwidth to CheckM8 from $0.82 per Gigabyte to $1.23 per Gigabyte. This constituted a 50% increase in the bandwidth rate.

14. CheckM8 continued to pay the invoices that it received from Globix, but a CheckM8 representative always sent an e-mail to Globix wherein CheckM8 demanded written confirmation that it is being charged at $0.82 per Gigabyte as opposed to the $1.23 rate indicated on the invoices.

15. Globix always responded and confirmed that it would continue to honor the contract rate, despite contrary indications on the invoices.

16. By unjustifiably attempting to overcharge CheckM8 at a rate of approximately $7,000 per month for the lease of hardware between April 2006 and February 2007, QTS is wrongfully and illegally attempting to claim at least $70,000 to which it is not entitled.

17. Globix further agreed in writing at the beginning of 2007 to back bill bandwidth overcharges that had already accrued, resulting in an 80% discount due on billings that were never adjusted in invoices through termination.

18. By unjustifiably attempting to overcharge CheckM8 at a rate of $1.23 per Gigabyte of bandwidth between June 2006 and February 2007, QTS is wrongfully and illegally attempting to claim at least $150,000 to which it is not entitled.

19. While CheckM8 and QTS had both agreed on a payment plan, CheckM8 contends that it was not behind on payments when the overcharges are subtracted from CheckM8's outstanding bill to QTS at the time of CheckM8's termination in February 2007.

20. Notwithstanding CheckM8's contention that it was caught up on payments to QTS, CheckM8 further contends that the service provided by QTS failed to meet

contractual obligations. Specifically, QTS breached the portion of its agreement that called on it to provide CheckM8 with 99.9% service uptime. Since the service was unavailable more than 0.1% of the time on multiple occasions during multiple months when the contract was in effect, QTS committed a material breach of the contract with CheckM8.

21. CheckM8 contends that it entered into the MSA with Globix in January 2005 after Globix represented that it would provide and deliver proper services. Globix failed to meet this basic and critical contractual obligation upon which CheckM8 detrimentally relied.

22. Throughout its business relationship with Globix, CheckM8 repeatedly demanded that Globix address the substandard service received by CheckM8.

23. Although agents of CheckM8 repeatedly indicated the severe and negative business impact being caused by the substandard service, Globix willfully, negligently, and recklessly ignored these demands.

24. As a result of the substandard service provided by Globix to CheckM8 in violation of contractual obligations, CheckM8 lost at least one major customer, and was forced to extend tens of thousands of dollars in credit to other dissatisfied customers in order to retain them.

25. CheckM8 sustained at least $1.27 million in damages over the course of two years.

## FIRST COUNT
## BREACH OF CONTRACT

26. Plaintiff QTS breached its contract with Defendant CheckM8 by failing to provide CheckM8 with the necessary and/or consistent services pursuant to both express and implied agreements between Plaintiff and Defendant. Said breach constituted a material breach because Plaintiff, through its agent(s), knew that reliable service delivery was essential to the contract and/or to Defendant's business. However, Plaintiff willfully, recklessly and negligently failed to provide and deliver reliable service.

27. As a result of Plaintiff's material breach of the contract, Plaintiff undermined and/or deprived the defendant of substantial revenue.

28. This substantial loss of revenue would not have occurred but for the material breach of contract committed by the plaintiff.

29. The plaintiff's material breach of contract was the proximate cause of defendant's substantial loss of revenue.

WHEREFORE, Counterclaimant respectfully requests and prays that this Court enter a judgment in its favor, awarding:

    a)     At least $1.27 million in compensatory and/or consequential damages

    b)     Any and all appropriate damages

    c)     Costs of suit

    d)     Pre-judgment interest

    e)     Post-judgment interest

    f)     Attorney's fees

    g)     Such other relief as the Court may deem just and appropriate.

## SECOND COUNT
## FRAUD

30. Defendant repeats and re-alleges all assertions within the first count of this counterclaim as if set forth at length herein.

31. Plaintiff committed material factual misrepresentations to the defendant, and such misrepresentations were made before and during the lifetime of the contract. These misrepresentations include, but are not limited to: Plaintiff's ability to provide a service that satisfies minimum criteria for quality; Plaintiff's ability to provide a service that is reliable; Plaintiff's ability to provide a service that is consistently accessible; Plaintiff's ability to adequately support its service.

32. Plaintiff knew or believed that its misrepresentations were false. Defendant contends that Plaintiff had actual knowledge of the falsity of its misrepresentations because of the nature the contract, the number of similar contracts entered into with other parties, and the special knowledge possessed by the plaintiff regarding its ability to delivery the services claimed. Plaintiff has actual knowledge of the falsity of its misrepresentations for a number of other reasons, and Defendant will articulate these reasons as discovery proceeds.

33. Plaintiff intended that the Defendant rely upon said misrepresentations for the purpose of entering into a contract and/or generating revenue through new and/or continued business with the defendant.

34. Defendant relied upon the misrepresentations by entering into and/or remaining in a contract with the plaintiff for its services.

35. Defendant was damaged, and such damages include but are not limited to: gross loss of revenue; loss of customer satisfaction; loss of revenue; loss of potential future referrals; loss of potential future revenue; harm to Defendant's commercial relationships with other parties; harm to Defendant's business reputation.

WHEREFORE, Counterclaimant respectfully requests and prays that this Court enter a judgment in its favor, awarding:

- a) At least $1.27 million in damages
- b) Any and all appropriate damages
- c) Punitive damages
- d) Costs of suit
- e) Pre-judgment interest
- f) Post-judgment interest
- g) Attorney's fees
- h) Such other relief as the Court may deem just and appropriate.

### THIRD COUNT
### INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

36. Defendant repeats and re-alleges all assertions within the first and second counts of this counterclaim as if set forth at length herein.

37. Plaintiff intentionally interfered with the business relationships that existed between Defendant CheckM8, its customers, its vendors, and other parties with which it

shared commercial interests. Such commercial relationships constituted protected interests of the defendant.

38. Plaintiff maliciously interfered with defendant's commercial relationships and, in so doing, intentionally interfered with Defendant's prospective economic advantage.

39. Plaintiff's intentional interference was responsible for causing Defendant's loss of prospective financial gain.

40. Defendant's commercial losses would not have occurred but for the intentional interference by the plaintiff in the defendant's aforementioned business relationships.

41. Plaintiff's intentional interference in said business relationships resulted in substantial damages in that Defendant CheckM8 sustained substantial financial losses due to either the loss of the business relationship(s), or to the damage inflicted upon said business relationship(s) due to intentional interference by the plaintiff.

WHEREFORE, Counterclaimant respectfully requests and prays that this Court enter a judgment in its favor, awarding:

    a)    At least $1.27 million in damages

    b)    Any and all appropriate damages

    c)    Punitive damages

    d)    Costs of suit

    e)    Pre-judgment interest

    f)    Post-judgment interest

    g)    Attorney's fees

    h)    Such other relief as the Court may deem just and appropriate.

## FOURTH COUNT
## NEGLIGENT INTERFERENCE WITH
## PROSPECTIVE ECONOMIC ADVANTAGE

42. Defendant repeats and re-alleges all assertions within the first, second, and third counts of this counterclaim as if set forth at length herein.

43. Plaintiff negligently interfered with the business relationships that existed between Defendant CheckM8, its customers, its vendors, and other parties with which it shared commercial interests. The Plaintiff knew or ought to have known that its negligence would affect the defendant and as a direct consequence, the defendant's commercial relationships with other parties.

44. It was foreseeable that defendant's commercial relationships would be substantially and negatively affected as a result of the Plaintiff's negligence.

45. As a direct and proximate consequence of Plaintiff's conduct, Defendant CheckM8 has sustained substantial damages.

WHEREFORE, Counterclaimant respectfully requests and prays that this Court enter a judgment in its favor, awarding:

    a)    At least $1.27 million in damages

    b)    Any and all appropriate damages

    c)    Punitive damages

    d)    Costs of suit

    e)    Pre-judgment interest

    f)    Post-judgment interest

    g)    Attorney's fees

    h)    Such other relief as the Court may deem just and appropriate.

## FIFTH COUNT
## UNJUST ENRICHMENT

46. Defendant repeats and re-alleges all assertions within the first, second, third, and fourth counts of this counterclaim as if set forth at length herein.

47. Plaintiff received the benefits of its contract with CheckM8, but failed to perform and deliver the services required under the contract. Plaintiff was enriched at the expense of CheckM8 because it received payment or a promise to pay in return for substandard services.

WHEREFORE, Counterclaimant respectfully requests and prays that this Court enter a judgment in its favor, awarding:

    a)    Any and all appropriate damages

    b)    Costs of suit

    c)    Pre-judgment interest

    d)    Post-judgment interest

    e)    Attorney's fees

    f)    Such other relief as the Court may deem just and appropriate.

# SIXTH COUNT
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

48. Defendant repeats and re-alleges all assertions within the first, second, third, fourth, and fifth counts of this counterclaim as if set forth at length herein.

49. Implied in the contract executed between the counterclaimant and the plaintiff is an obligation of good faith and fair dealing, and said covenant is owed both to and from the contracting parties.

50. Plaintiff, by the acts and admissions of its agents, has knowingly, intentionally and maliciously failed to fulfill its implied covenant of good faith and fair dealing with respect to its contract with the counterclaimant.

WHEREFORE, Counterclaimant respectfully requests and prays that this Court enter a judgment in its favor, awarding:

    a)    Any and all appropriate damages

    b)    Costs of suit

    c)    Pre-judgment interest

    d)    Post-judgment interest

    e)    Attorney's fees

    f)    Such other relief as the Court may deem just and appropriate

Dated: October 16, 2007          By:   __/s Nicholas G. Sekas_____
                                            (electronically filed)
                                            Nicholas G. Sekas, Esq.
                                            Sekas & Associates, LLC
                                            515 Madison Ave, 8th Floor
                                            New York, NY 10022